UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

    v.                                    Criminal No. 10-cr-085-SM

<u>Beatrice Munyenyezi</u>


O R D E R


Before the court is defendant, Beatrice Munyenyezi's,
motion for bail review (doc. no. 18).  For the reasons which
follow, the court finds that Munyenyezi is a serious flight risk
and that there are no conditions or combination of conditions
that will reasonably assure her appearance for trial.

Munyenyezi is charged in a two count indictment with
unlawful procurement of her citizenship and naturalization.  The
indictment alleges that Munyenyezi obtained her citizenship
through fraud, by entering false answers to material questions
on her naturalization application and immigration paperwork,
specifically with respect to questions about her "good moral
character."  The heart of the government's case against
Munyenyezi is the allegation that, while living in the area of
Butare, Rwanda, in 1994, Munyenyezi actively and personally
participated in, what has been commonly referred to as, the
"Rwandan genocide."

I.  Procedural History

    Munyenyezi's initial detention hearing occurred on June 24, 2010.  After the hearing, the court (Lynch, Mag. J.) issued an order from the bench, finding that the government had met its burden of proving that Munyenyezi's release posed both a danger to the community and a risk of flight.  On June 25, 2010, the court issued a written order summarizing its findings and rulings.  See Order (doc. no. 9).

    By motion filed on September 17, 2010, Munyenyezi sought review of her bail pursuant to 18 U.S.C. § 3142(f)(2)(B) (doc. no. 18).  On November 15, 2010, a hearing was held on Munyenyezi's motion.  Both parties agreed to conduct the hearing by offers of proof.

    Under 18 U.S.C. § 3142(f)(2)(B), a detention hearing

    may be reopened, before or after a determination by
    the judicial officer, at any time before trial if the
    judicial officer finds that information exists that
    was not known to the movant at the time of the hearing
    and that has a material bearing on the issue whether
    there are conditions of release that will reasonably
    assure the appearance of such person as required and
    the safety of any other person and the community.

    To qualify as new and material information, the evidence proffered by defendant must consist of "something other than a defendant's own evaluation of the strength of the case against him [or her]; i.e., truly changed circumstances, something unexpected, or a significant event."  United States v. Perozzi,

2

No. 09-cr-117-16-SM, 2009 WL 2929292, *1 (D.N.H. Sept. 9, 2009)
(quoting United States v. Rodriguez-Adorno, 606 F. Supp. 2d 232,
239 (D.P.R. 2009).

II. Proffers by Munyenyezi and the government.

    Here, Munyenyezi offers the following two sources of
information in an attempt to reopen her detention hearing: (1) a
bail order in United States v. Kobagaya, No. 09-cr-10005-MLB-
DWB, a case from the District of Kansas with similar allegations
as those asserted in this case, and where the defendant was
released pending trial; and (2) the declaration of Canadian
attorney Normand Marquis, who represents Munyenyezi's husband,
Shalom Arsene Ntahobali ("Ntahobali"), in his decade-long trial
on charges of genocide before the United Nation's International
Criminal Tribunal of Rwanda ("ICTR"), as well as excerpts from
the transcript of Munyenyezi's testimony at Ntahobali's trial.

    Munyenyezi also offers the argument that the present
Rwandan regime is totalitarian and biased against Munyenyezi and
that the government's case rests on witnesses whose statements
against Munyenyezi are unreliable and a product of the
totalitarian regime.  Munyenyezi bases this argument, in large
part, on the declaration of Attorney Marquis, who states that,
throughout his years of involvement with the ICTR and its
prosecution of Ntahobali, he heard no inculpatory evidence
against Munyenyezi.  Had there been any evidence that Munyenyezi

was involved in the genocide, Marquis asserts that the ICTR
trial of Ntahobali would have revealed it.  Marquis further
states that, based on his familiarity with the current regime in
Rwanda, he finds it unlikely that the government procured its
witnesses without assistance from the Rwandan government.

It is doubtful that the evidence proffered by Munyenyezi
would qualify as new and material information under 18 U.S.C. §
3142(f)(2)(B).  First, the bail order in the Kobagaya case is
immaterial to this court's determination of Munyenyezi's bail
status.  See United States v. Patriarca, 948 F.2d 789, 794 (1st
Cir. 1991) ("Detention determinations must be made individually
and, in the final analysis, must be based on the evidence which
is before the court regarding the particular defendant.").[1]
Second, the affidavit from Ntahobali's attorney, which questions
the credibility of the government's case against Munyenyezi
based on his decade-long experience with the ICTR trial of
Ntahobali, is best characterized as Munyenyezi's own "evaluation
of the strength of the case against [her]." Perozzi, 2009 WL
2929292 at *1.

However, even assuming that Munyenyezi has satisfied the
threshold of offering new and material evidence, the court is

---

[1]Even assuming its relevance, the facts material to the bail
determination in the Kobagaya case are distinguishable from
those in Ms. Munyenyezi's case for the reasons outlined by the
government.

4

persuaded, as was Magistrate Judge Lynch, that Munyenyezi remains a serious risk of flight and should be detained pending her trial.  18 U.S.C. § 3142(f)(2)(A).

III. Bail Reform Act

Under 18 U.S.C. § 3142(b), a court, in making a determination regarding detention, must evaluate the risk of the defendant's flight, the risk to the safety of any other person, and the risk to the safety of the community.  In circumstances when detention is not mandated by the court, the court is nonetheless empowered to impose conditions on release.  18 U.S.C. § 3142(c).

Pursuant to the provisions of 18 U.S.C. § 3142(g), a court, in assessing a defendant's risk of flight, shall consider the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt; (3) the history and characteristics of the accused, including family ties, past history, financial resources and employment; and (4) the nature and seriousness of the danger to any person or the community that would be posed by a release.

During the course of a hearing conducted pursuant to 18 U.S.C. § 3142, the government retains the burden of persuading the court that "no condition or combination of conditions will reasonably assure the defendant's presence at trial." United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988)

(quoting <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17-18
(1st Cir. 1987)); <u>see also</u> <u>United States v. Patriarca</u>, 948 F.2d
789, 793 (1st Cir. 1991).  For its part, the government is
required to offer a preponderance of the evidence to prove risk
of flight.  See <u>Patriarca</u>, 948 F.2d at 792-93.  Accordingly, the
court summarizes below the evidence relevant to the four factors
listed in 18 U.S.C. § 3142(g).

    1.  <u>Nature and circumstances of the offense charged.</u>

The charged offenses involve allegations of Munyenyezi
providing the United States government with false and fraudulent
information as to material facts in various applications and
forms, with which she was able to obtain her U.S. citizenship.
Should Munyenyezi be convicted, she faces up to ten years of
imprisonment on each count.  In addition to incarceration,
Munyenyezi would be stripped of her citizenship and would likely
face deportation proceedings.  If deported to Rwanda, Munyenyezi
faces the possibility of a life sentence in that country.

    2.  <u>The weight of the evidence.</u>

As explained in detail in Magistrate Judge Lynch's
detention order, the weight of the evidence against Munyenyezi
is "strong and compelling."  Order (doc. no. 9), slip op. at 4.
The government's evidence consists of the testimony of numerous
witnesses who have first-hand knowledge of Munyenyezi and her
role in the Rwandan genocide.  Munyenyezi attempts to

characterize all of the government's witnesses as lacking in
credibility.  The government concedes that four of its witnesses
perpetrated acts of genocide with Munyenyezi, and that three of
them are currently in custody in Rwanda.  However, the
government proffered that five of its other witnesses are
victims of acts of violence perpetrated by Munyenyezi and will
testify that they were raped at the direction of Munyenyezi.
Some of these alleged victims were able to identify Munyenyezi
by name after being shown only a photograph.

According to the government's proffer, its investigation is
untainted by any connection to the current regime in Rwanda; the
government has no ability to offer its witnesses any sort of
incentives to testify in Munyenyezi's trial; and the credibility
of its witnesses is strengthened by the fact that they have
nothing to gain and instead risk retribution for testifying
against Munyenyezi.

At paragraph 10 of the Affidavit of Special Agent Andersen,
in support of the warrant to search Munyenyezi's residence,
Andersen stated:

> The following information about Munyenyezi was
> developed from review of documentary evidence as well
> as several witness interviews in Rwanda.  With regard
> to my statements regarding Munyenyezi's activities
> during the Rwandan genocide, this is the result of
> interviews I conducted of different individuals who
> each were personally present during the time that
> Munyenyezi engaged in this conduct. For purposes of
> this affidavit, I will refer to only some of these

witnesses and will refer to them as Witnesses W1-W7. I
believe these witnesses are reliable because they are
eyewitnesses for whom it is a great personal risk to
submit to being a witness and because there is no
motivation to provide false information, given that
many of these witnesses currently reside in Rwanda and
have no contact with Munyenyezi. In addition, before
conducting the interviews of these witnesses, I did
not announce the purpose of my questioning or the
anticipated utility of statements being provided. In
addition, most of these witnesses had no opportunity
for contact with each other; therefore, the
information each provided was based on his or her own
experiences during the Rwandan genocide. Moreover, I
have corroborated substantive information from each of
these witnesses either through interview of other
individuals, statements made before other tribunals,
or from observations of documents and through other
investigative steps.

Doc. No. 22.

    3. <u>The history and characteristics of the Munyenyezi.</u>

In support of her release, Munyenyezi asserts that she
emigrated to the United States on March 10, 1998.  Since that
date, she has committed no criminal act and has, according to
counsel, lived a "quiet life" in New Hampshire, most recently in
Manchester, as a mother of three daughters.  At the time of her
arrest, Munyenyezi was a full-time student at Southern New
Hampshire University.

Munyenyezi has ties to the community.  Her daughters are in
high school and have been living nearby with others since
Munyenyezi's arrest and detention, Munyenyezi has a brother and
sister who live nearby.  Her brother, Jean Higiro, is a tenured
professor at Western New England College in Springfield,

Massachusetts.  Her sister, Prudence Kantengwa, resides in
Massachusetts, but is currently under indictment in a federal
case in Massachusetts with charges similar to those pending here
against Munyenyezi.

In support of detention, the government argues that, while
Munyenyezi may have familial ties to the community, she has a
strong incentive to flee (the risk of conviction on the pending
charges coupled with the possibility of deportation to Rwanda).
The government points to Munyenyezi's ties to what it refers to
as the "Rwandan Hutu diaspora."  Because of Munyenyezi's ongoing
ties to individuals connected to the genocide, see Doc. Nos. 22
& 27, the government asserts that Munyenyezi has the ability and
resources to flee.

Despite what Munyenyezi asserts are her limited financial
resources and difficult financial times (i.e., she lost a home
to foreclosure), she has engaged in extensive travel abroad.
According to the government, in the last seven years, Munyenyezi
has traveled in Europe and Africa as follows: Brussels – 2003;
Zambia – 2003; Brussels - 2004; Frankfurt – 2004; Kenya - 2004;
Tanzania – 2004; Belfast (Ireland) – 2006; Douvres (France) –
2006; Edinburgh (Scotland) - 2006; Gosselies (Belgium) – 2006;
Gardermoen (Oslo, Norway) – 2006; Kenya – 2006; London – 2006;
Tanzania – 2006; Brussels – 2007; Kenya - 2007; Tanzania - 2007;

Brussels – 2008; United Arab Emirates – 2008; Kenya – 2009; London – 2009; and Tanzania - 2009.  See Doc. No. 27.

The government also presents evidence of Munyenyezi's deceit during her February 27, 2006, testimony at her husband's ICTR trial on a material issue in his case.  As the evidence is currently under seal (doc. no. 23), the court will not discuss in this order the specifics related thereto.  At the hearing on November 15, 2010, proffers with respect to this evidence were heard by the court under seal.  The government argues that Munyenyezi's deceit served to refute the truth of the allegations of rape and genocide against her husband. Munyenyezi counters that her primary motive was not deceit, but she concedes that she testified falsely.  In short, the sealed material contains evidence, unrefuted by Munyenyezi, that Munyenyezi deceived the ICTR on a material matter related to her husband's role in the genocide, and she made no subsequent effort to correct her false testimony.

4. <u>Nature and seriousness of danger posed by Munyenyezi's release.</u>[2]

The serious nature of the charges provides probable cause that Munyenyezi has deceived the United States about her role in

---

[2] The court is not making a finding that Munyenyezi should be detained based on her dangerousness.  Nonetheless, the bail statute, 18 U.S.C. 3142(g)(4), requires the court, in weighing the factors relevant to a defendant's flight risk, to weigh the extent of the danger posed by a defendant's release.

hideous crimes against humanity.  Aside from the charges, however, the government has proffered no evidence that Munyenyezi's release poses any danger to any person or to the community.  Moreover, while living in the United States, Munyenyezi has engaged in no criminal behavior and has no record of violence.  The government has argued that there is a risk that witnesses against Munyenyezi living in Rwanda will suffer harm if she is able to obtain and disclose their identities to powerful connections she has in Rwanda.  The court has, however, granted a protective order to protect against such risk.  On balance, the question of the nature and seriousness of any danger posed by her release weighs in Munyenyezi's favor.

IV.  Conclusion

     The nature of the charges and weight of the evidence, coupled with the potential punishment if Munyenyezi is convicted, weigh heavily in favor of a finding that Munyenyezi is a flight risk.  The nature of the charges involve crimes of dishonesty and lying under oath in order to obtain citizenship and documents such as a visa and passport.  In this case, the government will have a dual burden; it must prove Munyenyezi's fraudulent statements by proving that she was an active participant in the Rwandan genocide.  The weight of the evidence against Munyenyezi is strong, and involves multiple eye witnesses to Munyenyezi's role in the genocide.  If convicted,

11

Munyenyezi faces severe consequences, including deportation to Rwanda, which as her counsel describes, is "the last place she would want to go."  I find that Munyenyezi has a strong incentive to flee rather than face trial on these charges.

With respect to the history and characteristics of Munyenyezi, I find that her ties to the community, while significant, are outweighed by evidence of her ties to a network of Rwandan's either accused of being involved in the genocide or dedicated to the overthrow of the current regime in Rwanda, and who would be both capable of and motivated to facilitate her flight.  Additionally, the evidence of Munyenyezi's ability to travel extensively despite having meager financial resources raises a strong concern that she has access to both the financial and other resources to flee.

Finally, mindful of the proffer indicating Munyenyezi's deceitful conduct in the past, the court is concerned about its ability to rely on any promise by Munyenyezi that she will abide by bail conditions and appear as ordered for her trial.  The charges constitute probable cause that Munyenyezi is not trustworthy; her deceit under oath at her husband's ICTR trial is evidence that corroborates her willingness to deceive a tribunal.

The court has considered alternatives to detention, such as those suggested by defense counsel: home confinement and

electronic monitoring.  However, should Munyenyezi violate the terms of electronic monitoring, the device would alert the government only after Munyenyezi has fled.  The court finds that the risk of flight in this case is too high to trust electronic monitoring.

The court has also reviewed the Pretrial Services Report dated June 24, 2010.  In that Report, the Pretrial Services Officer concluded that no conditions or combination of conditions could be fashioned that would reasonably assure Munyenyezi's appearance at trial.  At the November 15 hearing, Pretrial Services did not alter its recommendation of detention.

In sum, having reviewed the entire record in this case, and carefully considered the proffers by both sides, the court is persuaded by a preponderance of the evidence that Munyenyezi is a serious risk of flight and that there are no conditions or combination of conditions that will reasonably assure her appearance at trial.

SO ORDERED.

_____
Landya B. McCafferty
United States Magistrate Judge

Dated:  November 24, 2010

cc:  Jeffrey Auerhahn, esq.
     Aloke C. Chakravarty, Esq.
     Mark E. Howard, Esq.
     David W. Ruoff, Esq.

13